ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES<br><br>Recurrido<br><br>v.<br><br>SALINAS READY MIX, INC.<br><br>Recurrente | **KLRA202300501** | *REVISIÓN ADMINISTRATIVA* procedente de Departamento de Recursos Naturales y Ambientales<br><br>Caso Núm.: 08-420-A<br><br>Sobre: Infracción a Ley Núm. 136 del 3 de junio de 1976, s/e. y a su Reglamento |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 7 de mayo de 2024.

Comparece ante este foro Salinas Ready Mix, Inc. (en adelante, Querellada o "la recurrente") y nos solicita que revisemos una *Resolución y Notificación* emitida por el Departamento de Recursos Naturales y Ambientales (en adelante, DRNA o "agencia recurrida" o "foro administrativo") el 3 de julio de 2023 y notificada correctamente el 14 de septiembre de 2023. Mediante el referido dictamen, el foro administrativo acogió el Informe de la Oficial Examinadora y resolvió lo siguiente: (1) ordenó el cierre del pozo de abasto -localizado en la Carretera PR-52 Km. 66.8 Interior del Municipio de Salinas, Puerto Rico- de manera inmediata; (2) ordenó el pago de cantidad adeudada de $945,830.19 por el uso y aprovechamiento de agua; e (3) impuso el pago de $50,000.00 en concepto de multa por el uso y aprovechamiento ilegal de agua por no poseer una

franquicia otorgada por el DRNA y por haber ignorado la *Orden de Cese y Desista*, objeto de este caso.

Por los fundamentos que se exponen a continuación, se **CONFIRMA** la *Resolución* recurrida.

-I-

Este caso se inició, el 27 de agosto de 2008, con una *Orden de Cese y Desistimiento y Mostrar Causa* emitida por el DRNA contra la Querellada debido al uso y aprovechamiento de las aguas subterráneas de un pozo sin poseer para ello una franquicia expedida por el Secretario del DRNA. En la referida Orden, se estableció lo siguiente: (1) que tal violación fue descubierta el 17 de agosto de 2005; (2) que la Querellada adeudaba la cantidad de $325,859.00 hasta ese momento; y (3) programó una vista, para el 15 de octubre de 2008, para mostrar causa por la cual no se le debía imponer una multa de hasta $50,000.00.[1]

Luego, se señaló la vista adjudicativa para el 11 de diciembre de 2008 y, sin embargo, el 8 de diciembre de 2008 la Querellada solicitó reseñalamiento de la misma mediante *Moción Asumiendo Representación Profesional y Solicitud de Reseñalamiento de Vista*.[2]

Tras varios trámites procesales, el 10 de marzo de 2009 se celebró una vista adjudicativa en la cual las partes solicitaron 10 días calendarios para someter un acuerdo por escrito en conjunto.

Así las cosas, el 23 de julio de 2009, las partes presentaron un *Acuerdo de Transacción* donde la Querellada se obligaba a pagar la cantidad de

---

[1] Orden de Cese y Desistimiento y Mostrar Causa, anejo VII, págs. 40-43 del apéndice de la recurrente.
[2] Moción Asumiendo Representación Profesional y Solicitud de Reseñalamiento de Vista, anejo X, págs. 51-53 del apéndice de la recurrente.

$198,763.80 por el aprovechamiento de aguas desde diciembre 1997 a abril de 2006.[3]

No obstante, el 21 de septiembre de 2010, la Oficial Examinadora notificó que no recomendaba el referido proyecto de transacción debido a que: (1) no aplicaba el Reglamento Núm. 44 de Deudas No Contributivas Existentes a Favor del Estado Libre Asociado de Puerto Rico del Departamento de Hacienda; (2) no existía en el expediente documentación o elementos de juicio que justificaran la transacción de una deuda de $325,859.00 por $198,763.80: y, (3) ello resultaba en una aparente condonación de deuda sin consultar al Departamento de Hacienda ni al Departamento de Justicia en contravención al artículo VI de la Constitución de Puerto Rico.[4]

Posteriormente, se señaló vista adjudicativa para el 3 de septiembre de 2014. Sin embargo, el 3 de julio de 2014, la Querellada solicitó reseñalamiento de la misma mediante *Moción Asumiendo Representación Legal y en Solicitud de Reseñalamiento de Vista*.[5]

A esos efectos, el 5 de septiembre de 2014, se reseñaló la vista adjudicativa para el 9 de octubre de 2014 y la misma se convirtió en una Conferencia con Antelación a Vista por solicitud de la Querellada mediante *Moción Informando Requerimiento de Documentos y en Solicitud de Conversión de Vista*.[6] En la mencionada conferencia, se les concedió a las partes 15 días para

---

[3] Acuerdo de Transacción, anejo IX, págs. 47-50 del apéndice de la recurrente.
[4] Notificación de 21 de septiembre de 2010 del DRNA, anejo VI, págs. 8-10 del apéndice de la agencia recurrida.
[5] Moción Asumiendo Representación Legal y en Solicitud de Reseñalamiento de Vista, anejo VIII, págs. 44-46 del apéndice de la recurrente.
[6] Notificación de 5 de septiembre de 2014 del DRNA, anejo XII, pág. 18 del apéndice de la agencia recurrida.

presentar un informe conjunto de conferencia con antelación a vista.[7]

En ausencia del referido informe, el 19 de junio de 2018, el foro administrativo mediante *Notificación* citó a la Querellada a una Vista Sobre el Estado de los Procedimientos para el 6 de agosto de 2018.[8] En la referida vista, la Querellada no compareció y se le citó para el 21 de septiembre de 2018.

Durante la Vista sobre el Estado de los Procedimientos del 21 de septiembre de 2018, la Querellada compareció e indicó que necesitaba tiempo para familiarizarse con el caso. Por consiguiente, el 25 de septiembre de 2018 mediante *Notificación*, la agencia recurrida citó a la Querellada para vista adjudicativa el 14 de noviembre de 2018 y le ordenó que allí debía informar y evidenciar con documentos sobre su caso de quiebra.[9]

Como resultado, el 14 de noviembre de 2018, la Querellada no compareció a la Vista adjudicativa ni justificó su incomparecencia. Por ende, el 15 de noviembre de 2018, el foro administrativo ordenó: (1) a la Querellada que mostrara causa por la cual no se le debía anotar la rebeldía por su incomparecencia a la vista dentro de un término de 15 días; y, (2) a la División de Permisos y Franquicias de Agua realizar: (a) una inspección ocular en el pozo objeto de este caso y (b) presentar informe al respecto dentro de un término de 30 días.[10]

---

[7] Íd.
[8] Notificación, anejo VIII, págs. 44-46 del apéndice de la recurrente.
[9] Notificación, anejo XII, págs. 57-58 del apéndice de la recurrente.
[10] Notificación de 15 de noviembre de 2018 del DRNA, anejo XIV, págs. 20-21 del apéndice de la agencia recurrida.

En cumplimiento con la orden, el 11 de febrero de 2019, el ingeniero técnico de la División de Permisos y Franquicias de Agua -Hugo Febo Boria- preparó el *Informe* solicitado sobre la inspección al pozo y expresó lo siguiente:

> El 13 de diciembre de 2018, este servidor realizó una visita junto a los Vig. Melvin Rodríguez, el Vig. Lugo y el Vig. Alexander González, a los predios de Río Nigua Ready Mix, Inc. (antigua Salinas Ready Mix y antigua Caño Verde Ready Mix, Inc.) en Salinas. El primer lugar que visitamos fue la cometida del AAA y su contador con número de serie 090074649, cuya lectura fue de 5557.460 metros cúbicos. Cabe señalar que el contador de la AAA tenía la misma lectura de la visita realizada en octubre de 2018, por el Sr. Nelson Velázquez Reyes, lo que significa que el metro de flujo estaba dañado o tenía una línea alterna, como la indicaron empleados de la AAA en su investigación. [11]

Además, ese mismo día 11 de febrero de 2019, la Querellada presentó moción de *Renuncia de Representación Profesional* en la cual solicitó 30 días para comparecer con una nueva representación.[12]

No obstante, el 11 de octubre de 2019, el foro administrativo emitió *Orden de Mostrar Causa* en la cual indicó el transcurso de 7 meses sin ninguna comparecencia de la recurrente con nueva representación legal.[13]  Además, allí mismo se indicó que el referido *Informe* fue notificado a la Querellada el 7 de febrero de 2019 y, respectivamente, a la Oficial Examinadora el 7 de marzo de 2019.[14]

---

[11] Solicitud de Franquicia de Agua, Sr. José Luis Torres Cintrón (presidente) de Caño Verde Ready Mix, Corp. y/o Rio Nigua Ready Mix, Inc., Antigua Planta de Hormigón Salinas Ready Mix, Inc., O-FA-FAID6-SJ-00019-30062005, Municipio de Salinas, anejo XV, págs. 64-67 del apéndice de la recurrente.
[12] Renuncia de Representación Profesional, anejo XIII, págs. 59-61 del apéndice de la recurrente.
[13] Orden de Mostrar Causa de 11 de octubre de 2019, anejo XVI, págs. 24-25 del apéndice de la agencia recurrida.
[14] Íd.

Posteriormente, se cita a la Querellada para una vista el 3 de diciembre de 2019 y esta no compareció ni presentó justificación. A tales efectos, el 15 de marzo de 2023, el foro administrativo mediante *Notificación y Orden de Mostrar Causa* estableció lo siguiente: (a) otorgó 10 días a favor de la Querellada para que mostrara causa por la cual no se le debía de anotar la rebeldía por su incomparecencia, y (b) señaló nueva vista para el 19 de abril de 2023.[15]

Tras la incomparecencia de la Querellada a la vista del 19 de abril de 2023, el foro administrativo procedió a declararla en rebeldía mediante *Notificación* por escrito el 2 de mayo de 2023 y la citó nuevamente para vista en su fondo a celebrarse el 26 de mayo de 2023.[16]

Siendo así, el 26 de mayo de 2023, las partes comparecieron y se celebró la vista adjudicativa la cual fue presidida por la Oficial Examinadora, la Lcda. María V. Ortega Ramírez. El desfile de prueba inició con el testimonio del Ingeniero Hugo Febo Boria de la División de Franquicias y Permisos de Agua del DRNA y finalizó con el testimonio de la señora Gedzaida Martoral García de la Autoridad de Acueductos y Alcantarillados (en adelante AAA).

A causa de lo anterior, el 28 de junio de 2023, la Oficial Examinadora preparó un *Informe*[17] el cual fue acogido por la Secretaria del DRNA -Anais Rodríguez Vega- mediante *Resolución*[18] el 3 de julio de 2023. Allí se establecieron determinaciones de hechos clasificados

---

[15] Notificación y Orden de Mostrar Causa de 15 de marzo de 2023 del DRNA, anejo XVII, págs. 26-27 del apéndice de la agencia recurrida.
[16] Notificación de 2 de mayo de 2023 del DRNA, anejo XVIII, págs. 28-29 del apéndice de la agencia recurrida.
[17] Informe, anejo II, págs. 6-15 del apéndice de la recurrente.
[18] Resolución, anejo I, págs. 1-5 del apéndice de la recurrente.

en 4 grupos: (1) Hechos Admitidos por la Anotación de Rebeldía, (2) Hechos Probados con Prueba Documental, (3) Hechos Probados con Prueba Testifical, y (4) Hechos Admitidos por la Parte Querellada. Particularmente, sobre los Hechos Probados con Prueba Testifical se dispuso lo siguiente:

1. La parte querellada, por conducto de su representante legal, Lcdo. Edgardo Santiago Llorens, admitió a la señora Martoral personalmente, en reunión relacionada con la facturación y consumo de aguas de la AAA, que la parte querellada había dejado de usar aguas de la AAA y que, aparte de un tiempo en que no realizó operaciones y que no especificó, había estado utilizando agua del pozo entre 2016 y 2018. […]

2. Personal de la AAA realizó cuatro inspecciones de lugar de los hechos: en 2016, 2018, e incluyendo una inspección el 23 de mayo de 2023, dos días antes de la vista celebrada en el caso de autos, cuando se instaló un contador de agua para uso residencial, no comercial.

3. La parte querellada cambió en varias ocasiones el metro contador de agua de la AAA, la última vez el 23 de mayo de 2023. Estos metros duran en servicio siete (7) años, pero en el caso de autos duraron muchos menos.

4. La parte querellada tenía una conexión de un tubo antes y después del metro contador que medía el consumo de aguas de la Autoridad de Acueductos y Alcantarillados, identificado como "by-pass" de forma que el agua consumida no pasara por el metro. Entre el 2016 y el 2018 el metro existente estaba en las mismas condiciones. En 2018 se removió el contador.

5. La parte querellada tenía un uso en metro contador para registrar las aguas del Pueblo de Puerto Rico que, según el testimonio del Ing. Hugo Febo Boria estaba dañado y daba para atrás y para adelante. […]

6. El diámetro del metro contador instalado para las aguas de la AAA por la parte querellante es de 5/8 de pulgada, que son para uso residencial no industrial.

7. El agua del pozo no pasa para uso residencial no industrial.[19]

Además, la referida *Resolución* resolvió lo siguiente: (1) ordenó el cierre del pozo de abasto, objeto del caso de epígrafe, de manera inmediata; (2) ordenó el pago de cantidad adeudada de $945,830.19 por el uso y aprovechamiento de agua; e, (3) impuso el pago de $50,000.00 en concepto de multa por el uso y aprovechamiento ilegal de agua por no poseer una franquicia otorgada por el DRNA.

Inconforme con la *Resolución*, el 7 de agosto de 2023, la Querellada presentó una *Reconsideración y/o Relevo en Solicitud para que se Deje sin Efecto Anotación de Rebeldía y/o Relevo de Resolución y Notificación*.[20] Adujo que se le anotó la rebeldía en la vista adjudicativa celebrada el 26 de mayo de 2023 a pesar de su comparecencia a la misma y su contestación a la querella.[21]

Así las cosas, el 17 de agosto de 2023, la Oficial Examinadora preparó un *Informe*[22] el cual fue acogido por la Secretaria del DRNA mediante *Resolución*[23], el 18 de agosto de 2023. La referida *Resolución* declaró *No Ha Lugar* la moción de reconsideración presentada por la Querellada.

Aun insatisfecho con dicha determinación, el 20 de septiembre de 2023, la Querellada acude ante nosotros mediante recurso de Revisión Administrativa de epígrafe.

---

[19] Informe, anejo II, págs. 10-11 del apéndice de la recurrente.
[20] Reconsideración y/o Relevo en Solicitud para que se Deje sin Efecto Anotación de Rebeldía y/o Relevo de Resolución y Notificación, anejo IV, págs. 19-28 del apéndice de la recurrente.
[21] Íd.
[22] Informe, anejo VI, págs. 33-39 del apéndice de la recurrente.
[23] Resolución, anejo V, págs. 29-32 del apéndice de la recurrente.

Mediante este, adujo que la agencia recurrida cometió los siguientes errores:

1. ERRÓ EL DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES AL COMETER INCURIA POR NO TRAMITAR EL CASO POR MAS DE 15 LARGOS AÑOS Y NO PROCEDER A DESESTIMARLO.

2. ERRÓ EL DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES AL VIOLAR EL ARTÍCULO 27 DE SU REGLAMENTO DE PROCEDIMIENTOS ADJUDICATIVOS EN LA VISTA.

3. ERRÓ EL DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES AL ANOTAR LA REBELDÍA A LA QUERELLADA SALINAS READY MIX INC. EN LA MISMA VISTA.

4. ERRÓ EL DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES CUANDO VIOLÓ EL DEBIDO PROCESO DE LEY EN TODO EL TRÁMITE Y EN LA VISTA.

5. ERRÓ EL DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES EN LA APRECIACIÓN DE LA PRUEBA ORAL Y SUS DETERMINACIONES DE HECHOS E IMPONER LOS REMEDIOS EXAGERADOS IMPUESTOS.

Tras varias mociones presentadas por las partes, el 19 de octubre de 2023, emitimos *Resolución* en la que autorizamos la presentación de una transcripción de la prueba oral debidamente estipulada. A esos efectos, el 28 de diciembre de 2023, las partes de manera conjunta presentaron la referida transcripción de prueba oral estipulada.

En consecuencia, el 23 de enero de 2024, emitimos otra *Resolución* concediendo términos a las partes para presentar sus Alegatos Suplementarios respectivamente.

En cumplimiento, el 20 de febrero de 2024, la agencia recurrida presentó su Alegato.

Con el beneficio de la comparecencia escrita de ambas partes y la transcripción de la prueba oral, damos estos por perfeccionados y procedemos a resolver.

**-II-**

**-A-**

La incuria se define como la "dejadez o negligencia en el reclamo de un derecho, los cuales en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad." *Horizon v. Jta. Revisora, RA Holdings*, 191 DPR 228, 236 (2014). Su objetivo primordial es evitar premiar a una parte que se cruza de brazos aun conociendo la existencia de su derecho, si con ello se causa perjuicio a la otra parte o se lesionan importantes intereses públicos o privados. PIP v. ELA et al., 186 DPR 1 (2012).

El paso del tiempo puede impedir que un reclamante reciba el remedio que solicita y, en ese sentido, la doctrina de incuria establece que tal inacción por un largo periodo de tiempo impide que se provean los remedios solicitados. *Consejo Titulares v. Ramos Vázquez,* 186 DPR 311 (2012). La doctrina de incuria aplica tanto cuando no existe un término reglamentario o en ley para realizar determinada acción, así como cuando existe un término que no se notificó debidamente. *Íd*.

La aplicación de la doctrina de incuria no opera automáticamente por el mero transcurso del tiempo. *Puerto Rico Asphalt, LLC v. Junta de Subastas del Municipio de Naranjito*, 203 DPR 734 (2019) citando a *Alonso Piñero v UNDARE*, Inc., 199 DPR 32, 54 (2017). Su empleo requiere considerar los factores siguientes: (1) si existe alguna justificación para la demora; (2) el perjuicio que acarrea; (3) el efecto sobre los intereses privados o públicos involucrados. *Íd*., citando a *Alonso*

*Piñero v UNDARE*, Inc., *supra*; *Consejo de Titulares v. Ramos Vázquez*, 186 DPR 311, 341 (2012); *Comisión Ciudadanos v. GP Real Property*, 173 DPR 998, 1020 (2008); *Srio. DACO v J. Condóminos C. Martí*, 121 DPR 807, 822 (1988).

**-B-**

La Constitución del Estado Libre Asociado de Puerto Rico dispone como política pública "la más eficaz conservación de sus recursos naturales, así como el mayor desarrollo y aprovechamiento de los mismos para el beneficio general de la comunidad".[24] En el ejercicio de poder viabilizar tal disposición, la Asamblea Legislativa aprobó la Ley Núm. 23 de junio de 1972,[25] confiriéndole al DRNA el deber de implantar la política pública antes enunciada.[26] Además, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (en adelante LPAU), dispone en su sección 3.2 que "[t]oda agencia deberá adoptar un reglamento para regular sus procedimientos de adjudicación.[27]

Por ello, el Reglamento Núm. 6442 de 26 de abril de 2002,[28] rige lo concerniente a los procedimientos adjudicativos que sean traídos ante la consideración del DRNA al amparo de las leyes y reglamentos que administra.[29] Tal proceso puede ser iniciado con la presentación de una querella, solicitud o petición por iniciativa de la propia agencia o de persona particular,

---

[24] Art. II, Sec. 19, Const. ELA, LPRA, Tomo I.
[25] Ley Orgánica del Departamento de Recursos Naturales y Ambientales, 3 LPRA sec. 151. et. seq.
[26] Íd., sec. 153.
[27] Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9642.
[28] Reglamento de Procedimientos Administrativos del Departamento de Recursos Naturales y Ambientales de Puerto Rico.
[29] Artículo 2 del Reglamento Núm. 6442, *supra*. Véase, además, Sección 1.2 de la Ley Núm. 38-2017, 3 LPRA sec. 9602.

a raíz de la infracción de algún estatuto o reglamento que tutele la agencia.[30]

Dicha reglamentación establece que en su Artículo 27.8 que: "[t]odo caso sometido a un procedimiento adjudicativo ante esta Agencia deberá ser resuelto dentro de un término de seis (6) meses desde su radicación, salvo circunstancias excepcionales".[31] Lo anterior es idéntico con lo expuesto en la Sección 3.13(g) de la LPAU.[32]

Además, el Tribunal Supremo de Puerto Rico ha señalado que el requisito de seis meses para resolver un caso ante una agencia administrativa es un plazo meramente directivo y no jurisdiccional. J. Exam. Tec. Med. v. Elías *et al*, 144 DPR 483, 494 (1997). En dicho caso, el Tribunal Supremo explicó que de la agencia no resolver la controversia dentro del plazo de seis meses que dispone la ley, la parte deberá solicitar un *Mandamus* para que se ordene a la agencia a resolver el caso. J. Exam. Tec. Med, *supra,* a la pág. 496.

Como es sabido el recurso de *Madamus* se utiliza para obligar a cualquier persona, corporación, junta o tribunal a cumplir con un deber ministerial, cuando no existe otro remedio legal para exigir su cumplimiento. Además, de este recurso, la parte afectada puede radicar una moción de reconsideración ante la agencia al resolver tardíamente. *Lab. Inst. Med. AVA v. Lab. C. Borinquén*, 149 DPR 121, 136 (1999).

**-C-**

Según nuestro Tribunal Supremo, la rebeldía "es la posición procesal en que se coloca la parte que ha dejado

---

[30] Artículo 10.1 y 10.2 del Reglamento Núm. 6442, *supra.*
[31] Artículo 27.8 del Reglamento Núm. 6442, *supra.*
[32] Sección 3.13 de la Ley Núm. 38-2017, 3 LPRA sec. 9653.

de ejercitar su derecho a defenderse o de cumplir con su deber procesal". *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 587 (2011). El propósito del mecanismo de la rebeldía es evitar la dilación como estrategia de litigio. *Íd.*

Ahora bien, el mecanismo de la anotación de la rebeldía se encuentra codificado en nuestro derecho procesal civil en la Regla 45.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 45.1. En esencia, un tribunal -*motu proprio* o a solicitud de parte- podrá anotarle la rebeldía a una parte que: (1) no compareció al proceso después de haber sido debidamente emplazada; (2) no contesta o alega en el término concedido por ley, habiendo comparecido mediante alguna moción previa de donde no surja la intención clara de defenderse; (3) se niega a descubrir su prueba después de habérsele requerido mediante los métodos de descubrimiento de prueba; o, (4) ha incumplido con alguna orden del tribunal. Véase, *Rivera Figueroa v. Joe's European Shop*, supra, pág. 588.

Con referencia a la parte a la que se le anota la rebeldía, esta renuncia a presentar prueba contra las alegaciones de la demanda y a levantar defensas afirmativas, con excepción de las defensas de falta de jurisdicción y la de dejar de exponer una reclamación que justifique la concesión de un remedio. *Ocasio v. Kelly Servs.*, 163 DPR 653, 671-672 (2005); *Hernández v. Espinosa,* 145 DPR 248, 272 (1998); *Continental Ins. Co. v. Isleta Marina*, 106 DPR 809, 815 (1978). Entre los derechos que retiene el litigante en rebeldía que ha comparecido previamente están el de ser notificado de los señalamientos del caso, asistir a las vistas,

contrainterrogar a los testigos de la parte adversa, impugnar la cuantía de daños reclamada y apelar la sentencia. *Íd.*

Por su parte, la LPAU en la sección 3.10 establece lo siguiente:

> Si una parte debidamente citada no comparece a la conferencia con antelación a la vista, a la vista o a cualquier otra etapa durante el procedimiento adjudicativo el funcionario que presida la misma podrá declararla en rebeldía y continuar el procedimiento sin su participación, pero notificará por escrito a dicha parte su determinación, los fundamentos para la misma y el recurso de revisión disponible.

Es decir, la LPAU permite que se declare en rebeldía a la parte que no comparezca a cualquier procedimiento adjudicativo cuando esta haya sido debidamente citada. Empero, nuestro más Alto Foro ha sido enfático en establecer que la anotación de rebeldía no exime al foro que adjudica de evaluar si la causa de acción presentada amerita la concesión del remedio solicitado. *Álamo v. Supermercado Grande, Inc*., 158 DPR 93, 102 (2002). Véase, además, *Ocasio v. Kelly Servs., supra*, pág. 681; *Rivera v. Insular Wire Products* Corp., 140 DPR 912, 931 (1996).

-D-

Es norma reiterada en nuestro ordenamiento que los tribunales apelativos han de conceder gran deferencia a las decisiones de los organismos administrativos, por razón de la experiencia y pericia de las agencias respecto a las facultades que les han sido delegadas. *Graciani Rodríguez v. Garage Isla Verde, LLC*, et al, 202 DPR 117 (2019); *Mun. de San Juan v. Plaza Las Américas*, 169 DPR 310, 323 (2006); *Hernández Álvarez v. Centro Unido*, 168 DPR 592, 615-616 (2006).

Nuestro más Alto Foro ha establecido que las decisiones de las agencias administrativas gozan de una presunción de regularidad y corrección. *García v. Cruz Auto Corp.*, 173 DPR 870 (2008). Por esto, es necesario que aquel que desee impugnar dichas decisiones presente evidencia suficiente que derrote la presunción de validez de la que gozan las mismas y no descanse en meras alegaciones. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

A esos efectos, la revisión judicial comprende tres aspectos: la concesión del remedio apropiado, la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial, y la revisión completa de las conclusiones de derecho. *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010). Sobre las determinaciones de hechos de las decisiones de las agencias, el Tribunal Supremo ha establecido que estas serán sostenidas por el tribunal revisor si se basan en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Batista, Nobbe v. Jta. Directores*, supra, pág. 216, citando a *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 511-512 (2011).

Además, conforme lo ha interpretado nuestro Tribunal Supremo, la revisión judicial de este tipo de decisiones se debe limitar a determinar si la actuación de la agencia fue arbitraria, ilegal, caprichosa o tan irrazonable que constituyó un abuso de discreción. *Mun. De San Juan v. CRIM*, 178 DPR 164, 175 (2010). Por tanto, nuestra función se circunscribe a considerar si la determinación de la agencia es razonable, ya que se

persigue evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo. *Hernández Álvarez v. Centro Unido, supra*, pág. 616; *Otero v. Toyota*, 163 DPR 716, 728 (2005). De manera, que cuando un tribunal llega a un resultado distinto al de la agencia, este debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Otero v. Toyota, supra*, pág. 729. En conclusión, el tribunal solo podrá sustituir el criterio de la agencia por el propio cuando no pueda encontrar una base racional para explicar la determinación administrativa.

**-E-**

La Constitución del Estado Libre Asociado de Puerto Rico dispone en su Artículo II, Sección 7, que nadie será privado de su libertad o propiedad sin el debido proceso de ley. Esta garantía tiene como fin prevenir que el Estado abuse de sus poderes o que los ejerza de forma arbitraria. *Rodríguez Rodríguez v. ELA*, 130 DPR 562, 575 (1992). Este principio fundamental representa una norma de trato justo, que le impone al Estado la obligación de garantizar un proceso justo y equitativo cuando interfiera con intereses protegidos, como son los de propiedad o libertad del individuo. *Picorelli v. Departamento de Hacienda*, 179 DPR 720, 736 (2010), citando a *Hernández v. Secretario*, 164 DPR 390, 395 (2005).

En el ámbito administrativo, el debido proceso de ley es elástico para que se amolde a las circunstancias de cada caso en particular. Por ello, y a base de un

balance de intereses, deben examinarse los siguientes elementos: el interés de la persona afectada por la acción del Estado; el riesgo de una decisión errónea y cómo el requisito procesal lo evitaría; y el interés del Estado, incluyendo la carga fiscal que representaría añadir un requisito procesal. *Calderón v. CFSE*, 181 DPR 386, 398 (2011); *Domínguez Castro et al. v. ELA I*, 178 DPR 1, 47 (2010). Lo vital es que el proceso respete la dignidad de los ciudadanos afectados contra la arbitrariedad administrativa, de manera que la persona afectada pueda cuestionar las razones y la legalidad de la acción. *Picorelli v. Departamento de Hacienda, supra*, pág. 736.

El procedimiento exigido requiere, además, satisfacer las exigencias mínimas del debido proceso de ley; a saber: notificación adecuada y oportuna; la oportunidad de ser oído; el derecho a contrainterrogar; el derecho a examinar la evidencia presentada por la parte contraria y a presentar prueba oral y escrita a su favor; si lo prefiere, la asistencia de un abogado, un adjudicador imparcial; una decisión administrativa informada, con conocimiento y comprensión de la evidencia, basada en el expediente y sustentada con determinaciones de hechos y conclusiones de derecho. *Domínguez Castro et al. v. ELA I, supra*, pág. 47; *Calderón v. CFSE, supra*, pág. 399.

Además, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en su sección 3.1, 3 LPRA sec. 9641 (en adelante LPAU), dispone que en un procedimiento adjudicativo formal ante una agencia las personas tienen garantizados los siguientes derechos: (1) ser notificado oportunamente de los cargos o

querellas o reclamos en contra de una parte; (2) presentar evidencia; (3) una adjudicación imparcial; y (4) que la decisión sea basada en el expediente. Cónsono con lo anterior, la sección 3.13 (b) de la LPAU, 3 LPRA sec. 9653(b) establece que:

> El funcionario que presida la vista dentro de un marzo de relativa informalidad ofrecerá a todas las partes la extensión necesaria para una divulgación completa de todos los hechos y cuestiones en discusión, la oportunidad de responder, presentar evidencia y argumentar, conducir contrainterrogatorio y someter evidencia en refutación, excepto según haya sido restringida o limitada por las estipulaciones en la conferencia con antelación a la vista.

Asimismo, la Sección 3.18 de la LPAU, 3 LPRA sec. 9658, reitera que la base exclusiva para la acción de la agencia en un procedimiento adjudicativo y en la revisión judicial es el expediente administrativo.

## -III-

En el caso de autos, la recurrente imputó a la agencia recurrida cinco señalamientos de error. Por estar relacionados, atendemos en conjunto el primer, segundo, tercer y cuarto señalamiento de error.

En síntesis, la recurrente argumenta que el foro administrativo cometió incuria al no tramitar el caso por más de 15 años y no desestimarlo violando, así, el artículo 27 de su Reglamento de Procedimiento Adjudicativo. Además, alega que el foro administrativo erró al anotarle la rebeldía durante la vista y violar del debido proceso de ley en todo el trámite de esta. No tiene razón.

Según explicamos en el derecho aplicable, la doctrina de incuria establece que la inacción por un largo periodo de tiempo por cualquiera de las partes impide que se provean los remedios solicitados.

Particularmente, el caso de autos inició en el 27 de agosto de 2008 y culminó con la celebración de la vista en su fondo, el 26 de mayo de 2023. Conforme al expediente, la recurrente incumplió con varias órdenes administrativas, cambió de representación legal en distintas ocasiones, solicitó tiempo adicional para prepararse y no justificó su incomparecencia a los señalamientos de vistas. Por todo lo anterior, el 15 de marzo de 2023, la agencia recurrida le notificó a la recurrente mediante *Orden de Mostrar Causa* que tenía 10 días para indicar razón por la cual no debía de anotar la rebeldía en su contra, y transcurrido ese plazo sin comparecencia alguna, le anotó la rebeldía el 2 de mayo de 2023. A pesar de ello, según la transcripción estipulada de prueba oral, la recurrente participó activamente en la vista administrativa del 26 de mayo de 2023, argumentó y contrainterrogó a los testigos.

En primer lugar, es forzoso concluir que la demora en celebrar la vista administrativa ocurrió debido a las propias actuaciones de la parte recurrente, a sabiendas de la existencia de la reclamación incoada en su contra. Poco mérito tiene el recurrente para reclamar incuria, cuando los retrasos del proceso administrativo fueron causados por la propia parte con su forma temeraria de defenderse en el Foro administrativo. Ante esto, sostenemos que no se cometió el primer ni el segundo señalamiento de error.

Segundo, tras examinar la *Resolución* recurrida y la totalidad del expediente de autos, resulta evidente que el foro administrativo salvaguardó adecuadamente los derechos constitucionales que le asisten a la recurrente. De igual forma, no surge del expediente una

violación al debido proceso de ley contra dicha parte. Puesto que esta recibió notificación adecuada del proceso, tuvo oportunidad de ser oído, así como también derecho a tener asistencia de abogado, a contrainterrogar a los testigos y examinar la evidencia presentada en su contra. Por ello, determinamos que el foro administrativo no erró al anotar la rebeldía ni violó el debido proceso de ley de la recurrente. Sostenemos que no se cometió el tercer ni el cuarto señalamiento de error.

Por último, atendemos el quinto señalamiento de error. En síntesis, la recurrente alega que el foro administrativo erró en la apreciación de la prueba oral y sus determinaciones de hechos e imponer remedios exagerados. Por medio de este planteamiento, la recurrente adujo que la vista fue precipitada, ligera y/o atropellada sin prueba suficiente para vincular los supuestos actos con Salinas Ready Mix. Específicamente, la recurrente argumentó que el Ingeniero Hugo Febo Boria -de la División de Permisos y Franquicias de Agua- no pudo vincular ni establecer que la recurrente se sirvió del pozo de agua en cuestión ni como lo hacía.

Como veremos a continuación, resulta inmeritorio el quinto señalamiento de error. No obstante, recordemos que, en el ejercicio de nuestra jurisdicción apelativa, debemos deferencia a las determinaciones de hechos que formulan los foros administrativos, siempre que encuentran apoyo en el expediente administrativo, y satisfagan el estándar de prueba aplicable, es decir, el de evidencia sustancial. Igualmente, en materia de apreciación de la prueba, debemos deferencia a las determinaciones que realizan dichos organismos. Ello,

pues gozan de una presunción de legalidad y corrección, que se basa en la experiencia y pericia que se presume dichos organismos poseen. Dicha presunción, de ordinario, prevalecerá, a menos que la parte recurrente no demuestre evidencia suficiente que rebata dicha presunción.

Así las cosas, tras evaluar el expediente del caso de autos, concluimos que las determinaciones de hechos formuladas por el DRNA no solo encuentran apoyo en la totalidad del expediente administrativo y en la prueba presentada durante la vista administrativa en su fondo, sino que satisfacen el estándar de evidencia sustancial. Tal y como señalara el foro administrativo en la *Resolución* recurrida conforme a los hechos probados por prueba testifical, la recurrente "tenía una conexión de un tubo antes y después del metro contador que media el consumo de agua de la AAA, identificado como "by-pass" de forma que el agua consumida no pasara por el metro".

De acuerdo con la transcripción estipulada de la prueba oral, el Ingeniero Hugo Febo Boria estableció bajo juramento que en el 2018 visitó las facilidades e inspeccionó el contador de AAA, el cual no estaba funcionando y se lo comunicó a la señora Gedzaida Martoral García. Además, expresó que la recurrente en algún momento solicitó la franquicia de agua correspondiente, pero nunca cumplió con los requisitos ni subsanó su deuda y, por ello, nunca se concretó el mismo.

Asimismo, surge de la referida transcripción estipulada que la señora Gedzaida Martoral García sostuvo lo siguiente:

"Al examinar el contador […] concluyeron que el contador había sido manipulado […] la oficina tiene técnicos adiestrados para identificar cuando un contador ha sido manipulado y el agua de la línea retorno, que es algo que le da al inspector entender que si está pasando agua por la línea, pero no por el contador. Así que, como es terreno árido, y es bastante vegetado, pero […] estaba la tierra suelta, el hizo […]una pequeña excavación y ahí se encontró el "bypass" que es una especie de manguera, es un material que se llama material de 'vieca', que estaba conectado antes del contador, alrededor del contador, y volvía y se conectaba después para entrar en la propiedad, evadiendo así que el agua que entrara, pues, se contabilizara […]".[33]

Además, de lo anterior, la señora Gedzaida Mortoral García expresó lo siguiente sobre el referido contador:

[E]s relevante mencionar algo que honestamente es bien poco común, en, en, en la experiencia que tengo, verdad, de, de los contadores. Se instaló un contador nuevo, eh, posterior a la fecha en que se registró la cuenta. La cuenta se registra en octubre del 2018. En una visita que realizamos de seguimiento a terreno, luego de que el, el señor Febo nos contactara para decirnos que había validar si es que había otro "bypass" y por eso no se estaba registrando consumo en el contador, y detectamos que el contador estaba detenido. Lo cambiamos en enero del 2019, instalamos un contador nuevo, que, de acuerdo, verdad, a la… a las especificaciones de los equipos que la autoridad adquiere, el tiempo de vida útil de un contador es, mínimo, siete (7) años. El contador duro nueve (9) meses. En septiembre cuando nosotros regresamos el contador ya se… había dejado de metrar. Volvimos a, a inspeccionar para validar de que no se estuviese, eh, 'by paseando' servicio a través de una línea, pero no ha sido el caso. […] Hace dos (2) días lo volvimos a sustituir.[34]

. . . . . . . . .

De octubre 2018 se registró el servicio, en enero de 2019 se instaló un contador nuevo, y en octubre del 2019 el contador ya estaba dañado.[35]

Tras examinar la transcripción estipulada de la prueba oral, no coincidimos con la recurrente en que la

---

[33] Transcripción estipulada de la prueba oral de la vista administrativa del 26 de mayo de 2023, pág. 89.
[34] Transcripción estipulada de la prueba oral de la vista administrativa del 26 de mayo de 2023, pág. 92.
[35] Transcripción estipulada de la prueba oral de la vista administrativa del 26 de mayo de 2023, pág. 93.

prueba testifical resultó insuficiente. Tanto el testimonio del Ingeniero Hubo Febo Boria, como el de la señora Gedzaida Martoral García establecen que la recurrente no tenía los permisos necesarios para servirse de agua, pero aun así lo hacía a través del referido pozo de agua sin que se contabilizara el agua consumida.

En fin, es preciso recordar que, dirimir y adjudicar valor probatorio a la prueba testifical, conlleva un ejercicio de adjudicación de credibilidad por parte del Oficial Examinador con el que no nos encontramos en posición de intervenir y este Foro Revisor le otorga completa deferencia. Así, también, luego de examinar la totalidad del expediente y la transcripción estipulada, concluimos que la prueba presentada satisface el estándar de evidencia sustancial que surge de la totalidad del expediente administrativo.

Ante esto, sostenemos que no se cometió el quinto señalamiento de error.

**-IV-**

Por los fundamentos que anteceden, **CONFIRMAMOS** la *Resolución* emitida el 3 de julio de 2023 y notificada correctamente el 14 de septiembre de 2023 por el Departamento de Recursos Naturales y Ambientales.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones